**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JASON LEE FERINGA,

                    Plaintiff,

        v.                                  No. 5:15-CV-785
                                                  (LEK/CFH)

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                            **OF COUNSEL:**

Law Offices of Steven R. Dolson          STEVEN R. DOLSON, ESQ.
126 North Salina St., Ste. 3B
Syracuse, New York 13202
Attorneys for Plaintiff

Social Security Administration           PETER W. JEWETT, ESQ.
Office of Regional General Counsel
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorneys for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

Plaintiff Jason Lee Feringa brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner"

or "defendant") denying his applications for supplemental security income benefits

("SSI") and disability insurance benefits.[1]  Plaintiff moves for a finding of disability, and

the Commissioner cross moves for a judgment on the pleadings.  Dkt. Nos. 11, 13.  For

the following reasons, it is recommended that the matter be remanded to the

Commissioner for proceedings consistent with this Report-Recommendation and Order.

## I.  Background

Plaintiff, born on July 15, 1982, graduated from high school.  T at 37.  He

previously worked as a custodian "cleaning office buildings and office areas, picking up

trash, mopping floors, bathrooms" and in "hospital housekeeping."  Id. at 33-35.

Plaintiff protectively[2] filed for a Title II application for a period of disability and disability

insurance benefits and a Title XVI application for supplemental security income on

March 12, 2012.  T[3] at 154, 161.  Plaintiff alleged a disability onset date of March 1,

2011 due to "2 herniated discs."  Id. at 154, 194.  These applications were denied on

June 8, 2012.  Id. at 53-55.  Plaintiff requested a hearing before an administrative law

judge ("ALJ"), which was held via videoconference, was held on March 14, 2014 before

---

[1]  This matter was referred to the undersigned for report and recommendation by the Hon.
Lawrence E. Kahn pursuant to 28 U.S.C. 636(b) (2013) and Northern District of New York Local Rule
72.3(d).

[2]  "When used in conjunction with an 'application' for benefits, the term 'protective filing' indicates
that a written statement, 'such as a letter,' has been filed with the Social Security Administration, indicating
the claimant's intent to file a claim for benefits.  See 20 C.F.R. §§ 404.630, 416.340. There are various
requirements for this written statement. If a proper statement is filed, the Social Security Administration will
use the date of the written statement as the filing date of the application even if the formal application is
not filed until a later date."  Allen v. Comm'r of Soc. Sec., No. 5:14-CV-1576 (DNH/ATB), 2016 WL
996381, at *1 (N.D.N.Y.  Feb. 22, 2016), report and recommendation adopted sub nom., 2016 WL
1020858 (N.D.N.Y. Mar. 14, 2016).

[3]  References to "T" stand for pages in the administrative transcript and reflect the pagination on
the lower right hand corner of the pages, rather than the pagination at the header generated by CM/ECF.

ALJ Lisa B. Martin.  Id. at 28-52, 80-81.  The ALJ determined that plaintiff was not

disabled.  Id. at 15-24.  Plaintiff's timely request for review by the Appeals Council was

denied, making the ALJ's findings the final determination of the Commissioner.  Id. at 1-

5. This action followed.  Dkt. No. 1 ("Compl.").

## II. Discussion

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a district court may not

determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g),

1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.

1990).  Rather, the Commissioner's determination will only be reversed if the correct

legal standards were not applied, or it was not supported by substantial evidence.

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987);  Berry v. Schweiker, 675 F.2d

464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning

that in the record one can find "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'"  Halloran v. Barnhart, 362 F.3d 28, 31

(2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations

omitted)).   Where there is reasonable doubt as to whether the Commissioner applied

the proper legal standards, the decision should not be affirmed even though the

ultimate conclusion reached is arguably supported by substantial evidence.  Martone v.

Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d

983, 986 (2d Cir. 1987)).  However, if the correct legal standards were applied and the

ALJ's finding is supported by supported by substantial evidence, such finding must be

sustained, "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation

omitted); Venio v. Barnhart, 213 F.3d 578, 586 (2d Cir. 2002).

### B. Determination of Disability[4]

"Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available

to him or her based upon age, education, and work experience. Id. § 423(d)(2)(A).

Such an impairment must be supported by "medically acceptable clinical and laboratory

diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is

"based [upon] objective medical facts, diagnoses or medical opinions inferable from

[the] facts, subjective complaints of pain or disability, and educational background, age,

---

[4] Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably." Donato v. Sec 'y of Health and Human Services, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458,

at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. §

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers
> whether the claimant has a 'severe impairment' which
> significantly limits his [or her] physical or mental ability to do
> basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has
> an impairment which is listed in Appendix 1 of the regulations.
> If the claimant has such an impairment, the [Commissioner]
> will consider him [or her] disabled without considering
> vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who
> is afflicted with a 'listed' impairment is unable to perform
> substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity to
> perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to

establish each of the first four steps.  DeChirico v. Callahan,134 F.3d 1177, 1179-80

(2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step,

the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in

gainful employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  42 U.S.C. § 405(g), as amended; Halloran, 362 F.3d at 31.  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  The Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

## C.  ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, and has not engaged in substantial gainful activity since March 1,

6

2011, the alleged onset date.  T at 17.  The ALJ found at step 2 of the sequential

evaluation that, during the period in question, plaintiff had the severe impairments of:

(1) lumbar spine disorder with radiculopathy, (2) asthma, and (3) obesity.  Id.  At step 3,

the ALJ determined that plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of listings 1.00, 3.00, 4.00, 9.00,

or any listing equivalent.  Id. at 18.  The ALJ then concluded that plaintiff retained the

residual functional capacity ("RFC")

> to perform a full range of light work as defined in 20 CFR
> 404.1567(b)[5] and 416.967(b)[6], except the claimant needs a
> sit-stand option with a change of position opportunity as
> often as 30 minutes for one to two minutes.  The claimant
> must avoid climbing ladders, ropes, and scaffolding, and
> avoid more than occasional climbing of ramps and stairs,
> balancing, stooping, kneeling, crouching, and crawling.  The
> claimant must also avoid dangerous work hazards (including
> unprotected heights and exposed machinery) as well as
> extreme heat and humidity conditions.  Because of pain
> causing distraction and preventing detailed decision making,
> the claimant is limited to routine, uninvolved tasks.

Id. at 19.   At step 4, the ALJ concluded that plaintiff was unable to perform his past

relevant work as a "cleaner."  Id. at 22.  The ALJ, after hearing testimony from a

---

[5]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

[6]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967.

7

vocational expert ("V.E."), and considering plaintiff's age, education, work experience, and RFC, concluded that jobs existed in significant numbers in the national economy that plaintiff could perform.  Id. at 22-23.  These jobs included the titles of: electronics worker, cashier, and shipping and receiving weigher.  Id.  Therefore, the ALJ concluded that plaintiff "has not been under a disability, as defined under the Social Security Act, from March 1, 2011, through the date of this decision.  Id. at 23-24.

## D.  The Parties' Arguments

Plaintiff contends that the ALJ committed reversible error insofar as she (1) failed to account for plaintiff's "limited ability to ambulate" in determining his RFC, and (2) "failed to properly assess the opinion evidence" of plaintiff's treating nurse practitioner, Christina Morse.  Dkt. No. 11 at 1.  Defendant contends that the ALJ applied the correct legal standards and that the determination is supported by substantial evidence, and, thus, should be affirmed.  Dkt. No. 13 at 2.

## E.  Analysis

### 1.  Limits on Plaintiff's Ability to Ambulate

Plaintiff argues that the ALJ improperly "failed to account for [his] limited ability to ambulate."  Dkt. No. 11 at 3.  Specifically, he references treatment notes from Dr. Andrew Morpurgo, MD, which observed that plaintiff had a limp favoring his right leg; statements from consultative examiner Dr. Elke Lorensen, who observed that plaintiff limped onto his left leg, and concluded that plaintiff's cane is medically necessary; and

statements of treating nurse practitioner Christina Morse, who noted that plaintiff had "an antalgic gait." Id. at 3-4.

The regulations set forth the factors that the Commissioner will consider in determining the nature and severity of a claimant's impairment(s). These factors include:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [ ] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [ ] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [ ] pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Elke Lorensen, M.D. performed an internal medicine examination of plaintiff on May 14, 2012. T at 230. As relevant here, Dr. Lorensen noted that plaintiff complained of back pain, which worsened over the past five years. Id. Plaintiff told Dr. Lorensen that this pain is chronic and is "aggravated by walking up stairs, sitting, lying down." Id. Plaintiff reported that he could walk fifteen to twenty minutes without pain. Id. Plaintiff indicated that he has been using a cane for the past three months and uses it "all the time." Id. Plaintiff purchased the cane for himself, but "asked his doctor if he could use it, and she said yes." Id. Plaintiff reported his only treatment being pain medication, and that he tried physical therapy "but it put him in more pain." Id. Plaintiff reported

showering and dressing with assistance and indicated that he watches television, listens to the radio, and "rarely goes out." Id. at 321. Dr. Lorensen observed that plaintiff was "in no acute distress." Id. Plaintiff's gait was "abnormal," and Dr. Lorensen observed that plaintiff "limps onto his left leg." Id. Plaintiff refused to walk on his heels and toes or squat. Id. Plaintiff's stance was normal. Id. Dr. Lorensen indicated that the cane was "medically necessary on the basis of today's examination." Id. Dr. Lorensen observed that plaintiff's "gait with the cane is the same as the gait without the cane." Id. Plaintiff did not need assistance in changing for his examination. Id. However, he needed help getting onto the examination table, but was able to get off the examination table and "rise from chair without difficulty" "without the cane." Id.

Dr. Lorensen observed that plaintiff had full flexion of the cervical spine, extension of 25 degrees, rotation of 60 degrees bilaterally, and lateral flexion was "full bilaterally." T at 232. Plaintiff had no scoliosis, kyphosis, or abnormality in his thoracic spine, but did have "[e]xtreme tenderness to palpation in the right lateral lumbar spine area and the right sacroiliac area." Id. Plaintiff had full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally in the lumbar spine. Id. Plaintiff's straight leg raise was positive on the right to 30 degrees, "but the claimant was able to sit comfortably without any problem on the chair talking to [Dr. Lorensen] comfortably." Id. Plaintiff's hip flexion was 30 degrees on the right, and 40 degrees on the left; exterior rotation was 30 degrees bilaterally; and interior rotation was ten degrees bilaterally." Id. Plaintiff had right knee flexion of 100 degrees and left of 120 degrees. Id. He had full range of motion of his ankles, and there were no evident sublaxations,

10

contractures, ankylosis, or thickening.  Id.  Dr. Lorensen's prognosis for plaintiff was "fair."  Id. at 233.  His medical source statement ("MSS") provided, as relevant here, that "[t]here are moderate restrictions for ambulating, climbing stairs, bending, and lifting." Id.

On January 31, 2012, plaintiff's treating pain management provider Andrew J. Morpurgo, MD of Ithaca Center for Pain Management, observed that plaintiff had "decreased knee flexion strength on the right with him lying supine," positive straight leg raise on the right at 30 degrees, and negative straight leg raise on the left.  T at 226. Plaintiff's "crossed straight leg raise is negative bilaterally and Patrick's Maneuver sign is negative."  Id.  Dr. Morpurgo noted that plaintiff was "[a]mbulatory with a limp favoring the right leg, especially after going from lying to standing after the exam."  Id. at 226-27.

Plaintiff's treating nurse practitioner Christian Morse, who also works for the Ithaca Center for Pain Management, observed at a September 18, 2012 visit observed that plaintiff was "ambulatory with cane" but that she could not perform a complete exam as she was "unable to have him lie in the supine position on the exam table."  T at 265.  NP Morse noted at October 31, 2012 and February 28, 2012 visits that plaintiff was "ambulatory but has an antalgic gait."  Id. at 228, 280.  Also at the October 31 visit, plaintiff was unable to perform the straight leg raise bilaterally and was reported as "unable to lie supine for a long period of time and has tight hamstrings."  Id. at 280.  At the February 28, 2012 visit, plaintiff had "hamstring tightness over the right leg and pain in the back down the leg with his right leg lift to 10 degrees, cross straight leg raise at 20 degrees on the left leg grossly in tact.  Does complain of some pain in

the right with raising the left leg." Id. at 228.  At an April 3, 2012 visit with NP Morse,

plaintiff "lying supine, [had a] straight leg raise with hamstring tightness bilaterally at 40

degrees." Id. at 229.   Plaintiff had "pain across the back with straight leg lift." Id.

Plaintiff again was reported as "ambulatory with a limp favoring the right side more than

the left." Id.  On July 17, 2012, plaintiff had "[p]oint tenderness especially over the L2-3

and L3-4 region of the lumbar spine." Id. at 267.  Again, plaintiff was "unable to lie

supine for evaluation." Id.  On June 11, 2012, plaintiff had "point tenderness over the

lumbar region and in the paraspinous muscles into the flank region, especially on the

right." Id. at 269.  Lying supine, plaintiff's straight leg raise was "positive on the right at

30 degrees with pain into the back, negative on the left." Id.  Plaintiff had "hamstring

tightness bilaterally and decreased trunk range of motion." Id.   At a September 23,

2013 visit, plaintiff had "some slight tenderness over the right upper buttock." Id. at

347.  He was "ambulatory with a steady gait using his cane." Id.  On June 10, 2013,

plaintiff reported "no significant low back pain." Id. at 348.  Plaintiff was "able to lie

semi-recumbent." Id.   Barry J. Pollack, M.D., a neurosurgeon, examined plaintiff on

April 25, 2012. Id. at 345.  Dr. Pollack noted that plaintiff's seated straight leg raise was

negative for radicular pain, and "produced only low back pain bilaterally." Id.  Plaintiff's

"heel and toe walking were normal other than from antalgia." Id.

Here, the ALJ concluded that plaintiff was capable of performing a full range of

light work, which requires, among others, the ability to lift up to twenty pounds, frequent

lifting and carrying objects weighing upward of ten pounds, and "a good deal of walking

or standing." 20 C.F.R. § 404.1567.  The restrictions the ALJ worked in for plaintiff's

limited ability to ambulate were to require "a sit-stand option with a change of position opportunity as often as 30 minutes for one to two minutes," no climbing of ladders, ropes, and scaffolding; and only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.  T at 19.

SSR 96-9p assesses whether someone who uses a medically-required hand-held assistive device could still perform unskilled sedentary work.  SSR 96-9p: SSR 96-9p: Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity For Less than a Full Range of Sedentary Work, 1996 WL 374185, at *7 (July 2, 1996).  The report observed that someone who uses a  medically-required hand-held assistive device "in one hand" may still be capable of performing sedentary work because he may be able to carry items of up to ten pounds in his other hand.  Id.  Although the ALJ posed a hypothetical to the V.E. that included limitations, the ALJ did not address whether an individual who has an antalgic gate necessitating a cane could perform the full range of light work.  The ALJ posed the following hypothetical to the V.E.:

> an individual the claimant's age, education, and work
> background . . . . They can perform a full range of light work
> activities.  However, they need to have a sit/stand option in
> the workplace, that's the opportunity to do the job either
> sitting or standing and changing that position as often as
> every 30 minutes for one to two minutes plus having access
> to more than one breaks.  For postural they need to avoid
> ladder, rope, or scaffold climbing.  Can avoid more than
> occasional postural motions otherwise.  They need to avoid
> exposure to dangerous work hazards which would be
> unprotected heights and exposed machinery.  And also
> avoid exposure to extreme heat and humidity conditions.
> Finally, because of pain distractions that would cause some
> minor inattention and prevent detailed decision making they

13

are limited to routine, uninvolved type of work activities.

T at 46-47.  The V.E. concluded that such person could perform the titles of an

electronics worker, cashier II, and a shipping and receiving weigher.  Id. at 47.  The

V.E. "reduced the overall numbers by 75 percent to account for the sit/stand option."  Id.

The second hypothetical provided

> all of the limitations from the first except . . . they are limited
> to a full-range of sedentary work activities now.  For the
> change of position as often as every 30 minutes they get to
> briefly change positions that stand up, move around but only
> for one to two minutes again.  And also have access to
> multiple work breaks.  Everything else remains the same.

Id.  at 47-48.  The V.E. concluded that such person could perform the work of

document preparer and call out operator.  Id.

For a third hypothetical, the ALJ provided, "[i]f either of these [INAUDIBLE] and

they're walking would be using a cane for the light category would that exclude the jobs

within that hypothetical[?]"  T at 48.  The ALJ clarified that the cane was "just for

ambulation . . . just for walking."  Id.  The V.E. provided that no jobs would remain within

the category of light work with the addition of the cane for walking.  Id. at 49.  The V.E.

provided that the same sedentary titles remain for someone who needed a cane to

walk.  Id.  For the final hypothetical, the ALJ proposed that the hypothetical claimant

would be off task "because of frequent change of position . . . as often as every 15

minutes for three to five minutes going to be off task during that period of time.  So I

guess it's about six to 10 minutes every hour."  T at 49.  The ALJ testified that, with that

additional consideration, there would be no jobs that could be performed that exist in

significant numbers in the national economy.  Id.

14

The majority of the cases assessing whether an ALJ committed reversible error where the ALJ did not account for the plaintiff's use of a cane in assessing his RFC surround instances where the plaintiff failed to demonstrate that his cane was medically necessary.  See, e.g., Allen v. Commissioner of Soc. Sec., 5:15-CV-1557 (DNH/ATB), 2016 WL 996381(N.D.N.Y. Feb. 22, 2016); Gordon v. Colvin, 1:14-CV-541 (GTS), 2015 WL 4041729 (N.D.N.Y. July 1, 2015), Hoke v. Colvin, 1:14-CV-663 (GTS/CFH), 2015 WL 3901807 (N.D.N.Y. June 25, 2015); Canabush v. Commissioner of Soc. Sec., 1:13-CV-429 (FJS/CFH), 2015 WL 1609721, at *5 (N.D.N.Y. Apr. 10, 2015); Stanley v. Colvin, 6:12-CV-1899 (GTS), 2014 WL 1311963, at *8 (N.D.N.Y. Mar. 31, 2014); cf. Johnson v. Barnhart, 312 F. Supp. 2d 415, 428 (W.D.N.Y. 2003) (noting that where the consultative examiner concluded that the plaintiff needed a cane for balance, and the treating physician indicated that the plaintiff was moderately limited in walking, the ALJ's rejection of the the consultative examiner's conclusion that the plaintiff needed a cane without first obtaining clarification was an error of law).

Here, it does not appear disputed that the cane is medically necessary, as the medical record supports that, although the cane was not prescribed, it was approved by plaintiff's medical providers, and various medical professionals, including the consultative examiner, considered the cane to be medically necessary.  T at 226-229, 230, 280, 345.  The ALJ's RFC appears to take into account, in part, the fact that plaintiff uses a cane insofar as he was to avoid climbing scaffolds, ropes, and ladders, and must have a sit/stand option.  However, the RFC does not address additional possible limitations that arise for someone who requires the aid of a cane when

15

ambulating, such as how use of a cane in one's dominant hand may impact his ability to complete some of the duties of light work, such as the ability to carry items weighing up to twenty pounds with one hand while using a cane in another, and whether the need to use a cane in general could result in additional limitations on light work. See, e.g., Simmons v. Colvin, 13 Civ. 1724 (KBF), 2014 WL 104811 (S.D.N.Y. Jan. 8, 2014). Although the ALJ asked the VE about how the need for using a cane for ambulating would erode the job base, and the VE testified that it would eliminate light work jobs, the ALJ's RFC provided that plaintiff could perform the full range of light work, with the few limitations expressed. T at 18. Such a conclusion is not reflective of the VE's testimony that a person who needed a cane to ambulate; a sit/stand option; the ability to change positions every 30 minutes; access to more than one break; avoidance of climbing ladders, ropes, and scaffolding; and has minor inattentiveness and inability to complete detailed decision-making, could not perform light work. Id. at 46-49. Further, as the VE already reduced the amount of available light work jobs by 75% to account for a sit-stand option, it would appear likely that the number of available jobs would be reduced even further – perhaps eliminate entirely – when considering the additional limitation of a cane. Id. at 46-47.

Plaintiff testified that he needed his cane to walk, that he used it in and outside of the home. T at 40. Plaintiff's medical providers observed that plaintiff had an antalgic gait or a limp. Id. at 226-27, 229, 321, 342. Further, the consultative examiner observed an antalgic gait that remained the same with or without the cane, and opined that the cane was medically necessary. Id. at 233. As the ALJ failed to fully account

for plaintiff's use of a cane while ambulating in formulating plaintiff's RFC, the undersigned cannot conclude that the RFC is not based on substantial evidence. Accordingly, it is recommended that the matter be remanded so that the Commissioner may consider the impact of plaintiff's use of a cane on his ability to perform light work, and, if necessary, further consult a V.E.

### 2. Nurse Practitioner Morse's RFC

Plaintiff argues that the ALJ committed reversible error insofar as he gave little weight to NP Morse's opinion. Dkt. No. 11 at 5. Plaintiff opines that NP Morse's opinion is entitled to greater weight because (1) "Ms. Morse has treated Mr. Feringa consistently since 2012," (2) her opinion "is also consistent with substantial evidence in the record," and (3) the relevant portions of her RFC were not based on plaintiff's self-reporting, and, even if they were, NP Morse may properly rely on subjective complaints of pain in rendering her opinion. Id. at 6-7.

In NP Morse's January 22, 2014 Medical Source Statement ("MSS"), she indicated that plaintiff's diagnosis was Lumbar Stenosis, second degree lumbar arthritis. T at 341. NP Morse's prognosis for plaintiff was "poor." Id. At the start of the section of the MSS that asks the author to determine the frequency of the patient's ability to perform certain tasks in an eight-hour work day, NP Morse wrote in "patient report." Id. She provided that plaintiff's pain or symptoms would "constantly" be severe enough to interfere with attention and concentration necessary to perform even simple work tasks. Id. Next to this answer, NP Morse again wrote "per pt." Id. In response to a question

asking for the number of city blocks plaintiff could walk without rest or severe pain, NP Morse wrote, "2-3 Blocks per pt." Id. NP Morse provided that plaintiff could sit for two hours before needing to get up, and indicated next to this answer, "per pt." Id. at 342. NP Morse indicated that plaintiff could stand for fifteen minutes at one time, and wrote that this answer was "per pt." Id. NP Morse provided that plaintiff could sit for a total of less than four hours in an eight-hour day, and stand/walk for less than two hours. Id. She provided that plaintiff would not need to include periods of walking around during an eight-hour work day. Id. She provided that plaintiff would need a job that permitted shifting his position at will from sitting, standing, or walking, and would need to take unscheduled breaks during the work day. Id. Regarding the frequency of plaintiff's need for breaks, NP Morse wrote "every 15 min per pt." Id. She provided that plaintiff would need to rest for "1 hour per pt." before returning to work. Id. NP Morse indicated that ,during such breaks, plaintiff would need to sit. Id. NP Morse provided that plaintiff needs a cane when he stands or walks. Id. Further, she indicated that he could not lift or carry fifty, twenty, ten, or less than ten pounds. Id. Nurse Morse also provided that plaintiff, "per pt," could rarely look up, occasionally hold his head static, and frequently look down and turn his head to left and right. Id. at 343. Nurse Morse indicated that, "per pt," plaintiff could rarely climb stairs, and never twist, stoop, crouch/squat, or climb ladders. Id. Finally NP Morse checked that plaintiff's impairments were likely to produce "good" and "bad" days, and would likely cause him to be absent more than four days per month. Id. She provided that plaintiff was not capable of sustaining full-time work. Id.

Contrary to plaintiff's contentions otherwise, Dkt. No. 11 at 5, a reading of the ALJ's decision reveals that the ALJ did not accord NP Morse's opinion little weight due to her status as a nurse practitioner, an "other" source, 20 C.F.R. § 404.1513; rather, the ALJ accorded little weight to NP Morse's opinion because she concluded the MSS was based on plaintiff's report, rather than the nurse's own medical opinion as to his limitations.  Although "the Second Circuit has long recognized that the opinions of a nurse practitioner who regularly treats a claimant is entitled to 'some extra consideration,'" the medical evidence from NP Morse is arguably based either entirely, or almost entirely on the plaintiff's subjective complaints. Milliman v. Colvin, 6:14-CV-310 (GTS/CFH), 2015 WL 5512497, at *8 (Sept. 15, 2015) (quoting Duell v. Astrue, 8:08-CV-969, 2010 WL 87298, at *6 (N.D.N.Y. Jan. 5, 2010)).  To the extent plaintiff may be arguing that the ALJ failed to take into account NP Morse's treatment records, although NP Morse's treatment records did indicate positive straight leg raises and difficulty lying supine, the ALJ considered that more recent medical records suggested that plaintiff was able to walk up to a mile to the store, had been completing walking exercises at home, and his medicine was somewhat more effective.  T at 229, 267, 269, 280, 348.  Otherwise, NP Morse's medical records contain few objective findings and do not include any discussion of diagnostic test results, or specific physical limitations on the plaintiff's abilities to lift, sit, stand, or walk.  Id. at 226-29, 347-48. Further, the objective medical evidence in the record – plaintiff's October 2011 MRI – was read by Dr. Michael S. Niziol as revealing that plaintiff suffered mild degenerative

disk disease at the L4-5 and L5 SI.  T at 241.[7]  Barry J. Pollock, M.D. agreed with this assessment.  Id. at 346.  Although NP Morse notes that plaintiff had an antalgic gait, the treatment notes do not address whether plaintiff's antalgic gait means that he is limited to walking/standing for less than two hours in an eight-hour work day, as opined in the RFC.  Id. at 342.

Plaintiff argues that case law supports that a medical provider properly may rely on a patient's subjective complaints of pain.  Dkt. No. 11 at 7 (citing SSR 06-03p; Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir 2003).  Certainly, it is true that a treating source may take into account the patient's subjective complaints.  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) ("Medically acceptable clinical and laboratory diagnostic techniques include consideration of a patient's report of complaints, or history, as an essential diagnostic tool.").  However, "a treating source's opinion is not considered well-supported if it is based entirely on the claimants's own subjective reports."  Capron v. Colvin, 14-CV-6080 (JCS), 2015 WL 3906723, *9 n.10 (W.D.N.Y. June 25, 2015) (citing Baladi v. Barnhart, 33 F. App'x 562, 563 (2d Cir. 2002) and Polynice v. Colvin, 576 F. App'x 28, 31 (2d Cir. 2014)).

Here, Plaintiff argues that, although portions of the MSS contained notations indicating that the answers were "per patient," the relevant portions of NP Morse's MSS

---

[7]  The radiology report further provides that plaintiff had "focal round hyperintense lesions present within the L1 and L3 vertebral bodies on T1 and T2-weighed images which suppresses on the inversion recovery images consistent with benign hemangiomas.  No other focal bony abnormality is seen.  No fracture is seen."  T at 241.  At plaintiff's L4-L5 level, "there is a mild broad-based disk herniation which causes minimal impression on the anterior thecal sac.  Neural foramen appear patent bilaterally."  At the L5 S1 level "there is a mild broad-based disk herniation which does not cause mass effect on the thecal sac or exiting nerve roots.  There are mild hypertropic changes within the facet joints.  Neural foramen appear patent bilaterally."  T at 241.

were based on her personal medical opinions. Dkt. No. 11 at 6. Plaintiff argues that

the MSS supports this interpretation because the sections that set forth plaintiff's lifting

limitations, that his impairment caused good and bad days, that plaintiff would likely

miss more than four days per month of work, and that plaintiff was incapable of

sustaining full-time work were not accompanied by "per patient" notations, indicating

that those answers were NP Morse's own conclusions. Id. Defendant argues that NP

Morse's underlined note at the top of the MSS indicating "patient report," and the fact

that she indicated "no less than seven times" that her answers were "per pt," it is clear

that at least portions of NP Morse's MSS were based on plaintiff's self reporting. Dkt.

No. 13 at 14. The undersigned is unable to determine NP Morse's intent in writing "per

pt." next to the majority, but not all of her answers. Although NP Morse may have

intended, as plaintiff suggests, that any answer not accompanied by "per pt." was NP

Morse's own conclusion, it is equally likely that NP Morse's initial per patient report and

several additional indications that her responses were per plaintiff's report were

intended to demonstrate that *all* of her responses were based on plaintiff's self-

reporting. T at 341-44. To attempt to determine NP Morse's intent would be entirely

speculative and not appropriate for the undersigned to attempt.

NP Morse's MSS is the only MSS in the record from a treating provider. T at

341. The only other MSS considered is that of consultative examiner Dr. Lorsensen,

who opined that plaintiff had moderate restrictions for "ambulating, climbing stairs,

bending, and lifting." Id. at 233.[8] Dr. Lorensen's assessment did not set forth specific

limits on plaintiff's abilities to walk, stand, or sit in an eight-hour work day. Id. The

Second Circuit has held that a medical opinion's "use of the terms 'moderate' and 'mild,'

without additional information, does not permit the ALJ, a layperson notwithstanding her

[or his] considerable and constant exposure to medical evidence, to make the

necessary inference that [the claimant] can perform the exertional requirements of the

[relevant level] of work." Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000), superceded

by regulation on other grounds by 20 C.F.R. § 404.1560(c)(2) (citing Balsamo v. Chater,

142 F.4d 75, 81-82 (2d Cir. 1998)); Allen v. Commissioner of Soc. Sec., 14-CV-1368

(DNH/CFH), 2016 WL 996381 (N.D.N.Y. Feb. 22, 2016), adopted sub nom. by 2016

WL 1020858 (N.D.N.Y. Mar. 14, 2016)). Further, the ALJ accorded Dr. Lorensen's

opinions "some weight." Id. at 22. Thus, as the ALJ gave "little weight" to NP Morse's

findings and "some weight" to Dr. Lorsensen's findings, it is not clear the medical

evidence upon which the ALJ based his RFC. Light work requires standing and/or

walking for six hours in an eight-hour work day and sitting for at least two hours, or

"'sitting most of the time with some pushing and pulling of arm and leg controls.'"

Hayes v. Colvin, 13-CV-1566 (MAD/TWB), 2015 WL 1033058, at *9 (N.D.N.Y. Mar. 9,

2015) (citing S.S.R. 83-10 and quoting 20 C.F.R. § 404.1567(b)). Although the ALJ

opined that plaintiff could perform light work, and, thus, could walk/stand for at least six

hours, sit for at least two, or do mostly sitting for the entirety of an eight-hour work day,

---

[8] The record contains an RFC assessment from C. Coulson. However, the ALJ's decision does not mention this assessment. T at 234-39. Further, at the hearing, plaintiff's counsel objected to the consideration of this assessment, and the ALJ indicated that she would not consider it. Id. at 31-32.

T at 18, it is unclear on what medical evidence he based this finding due to the little weight accorded to NP Morse and "some weight" accorded to the "moderate restrictions" finding by consultative examiner Dr. Lorsensen.

Ultimately, as the undersigned recommends that the matter be remanded for consideration of whether plaintiff's need for a cane while ambulating impacts his ability to perform light work or reduce the number of jobs available in the national economy, the undersigned also recommends that, on remand, it be considered whether a new medical source statement is required from either NP Morse or another of plaintiff's treating providers, and/or whether a new consultative examination is necessary to review plaintiff's specific abilities to perform the functions necessary for light and sedentary work.

### III. Conclusion

Having reviewed the administrative transcript and the ALJ's findings, the undersigned concludes that the ALJ's determination is not supported by substantial evidence, and that remand for further administrative action consistent with this Memorandum-Decision and Order is needed.  Accordingly, it is hereby:

**RECOMMENDED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be **GRANTED** and that the matter be remanded to the Commissioner for additional proceedings pursuant to sentence four of 42 U.S.C. 405(g) for further proceedings consistent with this Report-Recommendation and Order; and it is

**ORDERED** that the Clerk of the Court serve copies of the Report-Recommendation and Order on the parties in accordance with the Court's Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have **fourteen (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED.**

Dated: September 9, 2016
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge